1

2

3

4                              UNITED STATES DISTRICT COURT

5                             NORTHERN DISTRICT OF CALIFORNIA

6

7    C. T., et al.,                              Case No.  24-cv-09507-DMR

8                      Plaintiffs,
                                                 **ORDER ON MOTION TO DISMISS**
9            v.
                                                 Re: Dkt. No. 17
10   OAKLEY UNION ELEMENTARY
     SCHOOL DISTRICT,
11
                       Defendant.
12

13          Plaintiff C.T., a minor, by and through her guardians ad litem Jeremy and Daisy

14   Templeton, filed this complaint against Oakley Union Elementary School District ("Oakley").

15   Plaintiff alleges that Oakley failed to take appropriate action to prevent and address sexual

16   harassment and bullying by Plaintiff's peers that followed an incident of sexual misconduct

17   Plaintiff experienced off-campus.  [Docket No. 1 (Compl.).]  Oakley moves to dismiss under

18   Federal Rule of Civil Procedure 12(b)(6).  [Docket Nos. 17 (Mot.), 20 (Reply).]  Plaintiff opposes.

19   [Docket No. 19 (Opp'n).]

20          This matter is suitable for determination without oral argument.  Civ. L.R. 7-1(b).  For the

21   reasons stated below, the court grants Oakley's motion to dismiss.

22   **I.      BACKGROUND**

23          **A.      Statement of Facts**

24          Plaintiff makes the following allegations in the complaint, which the court takes as true for

25   purposes of this motion.[1]  Plaintiff attended school in the Oakley school district from the 2014-15

26

27   _____
     [1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all
28   of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)
     (per curiam) (citation omitted).

United States District Court
Northern District of California

school year until the 2022-23 school year, when she matriculated to high school in a different school district. Compl. ¶ 6. Plaintiff alleges that she was subjected to a continuous pattern of targeted bullying, abuse, and harassment from her peers during the Seventh and Eighth Grades (2021-22 and 2022-23 school years). *Id.*

The harassment began in October 2021. *Id.* ¶ 7. Plaintiff alleges that she experienced "sexual harassment, assault/battery, and/or dating violence" at her family's home by another Oakley student who was her then-boyfriend (referred to as A.A.). *Id.* ¶¶ 7, 8. She alleges that A.A. told her to sit in his lap, touched her vaginal area without her consent, and said, "Now you've been dry fucked." *Id.* He then grabbed her waist and moved her up and down in a humping motion. *Id.* After the incident, Plaintiff reported A.A.'s conduct to District School Psychologist Nicole Jurand. *Id.* ¶ 8. Plaintiff alleges that Jurand failed to take sufficient follow-up action—for example, Jurand did not speak to A.A. about the incident, report the incident to Plaintiff's parents, or report the incident to Oakley or any other authorities who could take appropriate action. *Id.* Throughout the Fall 2021 semester, A.A. continued to engage in inappropriate sexual conduct against Plaintiff, such as trying to kiss her by moving her arms away, even after Plaintiff refused his attempts by pushing him away. *Id.* ¶ 9.

In December 2021, Plaintiff ended her relationship with A.A. *Id.* In January 2022, Plaintiff was in the same English class as A.A. *Id.* ¶ 10. During class, A.A. directed his friends to utter slurs against Plaintiff (e.g., "fag"), causing Plaintiff significant emotional distress. *Id.* The English teacher reprimanded the harassers. *Id.* Later that day, after learning about the verbal abuse, Plaintiff's mother requested that Plaintiff be transferred to a different English class. *Id.* Oakley granted the transfer request. *Id.* However, in April 2022, Oakley transferred A.A. into Plaintiff's new English class, causing Plaintiff discomfort and anxiety. *Id.* ¶ 11.

In June 2022, A.A. added Plaintiff to a group chat in which he and his friends continued to sexually harass her and mock her appearance. *Id.* ¶ 12. In July 2022, Plaintiff's mother submitted an inter-district transfer request so Plaintiff could attend a different middle school the following school year. *Id.* ¶ 13. Oakley granted the request, and Plaintiff transferred to O'Hara Park Middle School for eighth grade. *Id.* At some point, Plaintiff's records were transferred to O'Hara Park

Middle School as well, at which time Jurand spoke with District School Counselor Adi Kondonijakos about the October 2021 off-campus sexual misconduct by A.A. *Id.* ¶ 18.

In August 2022, during a counseling session with a school counselor, Plaintiff suffered a mental breakdown in which she confessed to suffering depression and thoughts of suicide. *Id.* ¶ 14. Plaintiff's mother was informed, and Plaintiff received psychiatric care, including a three-day stay at a psychiatric hospital. *Id.* Plaintiff was prescribed anti-depressant drugs and returned to school. *Id.* Plaintiff continued to attend group therapy and psychiatric appointments. *Id.* ¶ 15.

In April 2023, Plaintiff decided to confront A.A. via text message about his sexually inappropriate and hostile behavior toward her. *Id.* ¶ 16. In response, A.A. added his friends to the text thread, including a girl identified in the complaint as A.M. who threatened to physically attack Plaintiff. *Id.* Two days later, A.M. punched Plaintiff in the back of her head nine times while Plaintiff was walking to class. *Id.* After the attack, Plaintiff told her parents about the off-campus sexual misconduct by A.A. in October 2021, which is the first time her parents learned of the incident. *Id.* ¶ 17. Plaintiff's parents investigated and learned from Kondonijakos that Plaintiff had reported the incident to Jurand soon after it had occurred. *Id.* ¶ 18. Plaintiff's parents submitted a records request to Oakley to learn what the school district had done to address A.A.'s conduct, but the records provided by Oakley did not include anything related to Plaintiff's report of the sexual misconduct or Oakley's response to it. *Id.*

In June 2023, one of A.A.'s friends tripped Plaintiff with a towel while they were on a school field trip. *Id.* ¶ 19. Plaintiff promptly reported the incident to school staff, but the school failed to take action. *Id.* In August 2023, Plaintiff's parents filed a complaint against Oakley for failing to address the continued pattern of abuse and harassment, and requested further information and documentation related to Plaintiff's report of A.A.'s sexual misconduct. *Id.* ¶ 20. In September 2023, Superintendent Jeffrey Palmquist sent Plaintiff's parents a letter stating that Oakley was unable to produce further information about the report because they "no longer have an employment relationship with (nor access to) the practitioners you noted" and "regarding personal counseling notes that they may have made for themselves, these are not something we have access to or are able to produce." *Id.* ¶ 21.

3

At the time of filing the complaint, Plaintiff was 15 years old and attending Tenth Grade within the Liberty Union High School District. *Id.* ¶ 1.

**B.    Procedural History**

On March 28, 2024, Plaintiff served a government claim pursuant to Cal. Gov. Code § 910, *et seq.* Compl. ¶ 23. Oakley rejected Plaintiff's claim on July 2, 2024. *Id.* Plaintiff filed this complaint on December 30, 2024.

Plaintiff brings four claims for relief: 1) violation of Title IX for gender discrimination and hostile environment; 2) violation of California Education Code section 220 for gender discrimination and hostile environment; 3) negligence; and 4) negligent training and supervision.

## II.    LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir.

1    2003) (quotation omitted).  However, leave to amend may be denied where the complaint "could

2    not be saved by any amendment," i.e., "where the amendment would be futile."  *Thinket Ink Info.*

3    *Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

4    **III.    DISCUSSION**

5        **A.    Discrimination Claims**

6        Oakley argues that Plaintiff failed to plead sufficient facts to support a Title IX claim or a

7    section 220 claim.

8        Title IX of the 1972 Education Amendments prohibits discrimination on the basis of sex

9    "under any education program or activity receiving Federal financial assistance."  20 U.S.C. §

10   1681.  A plaintiff can pursue a private right of action "against recipients of federal education

11   funding for alleged Title IX violations."  *Karasek v. Regents of Univ. of California*, 956 F.3d

12   1093, 1104 (9th Cir. 2020).  However, the plaintiff may only recover damages if the "official

13   policy" of the funding recipient discriminates on the basis of sex.  *See id.* (citing *Gebser v. Lago*

14   *Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)).  "In sexual harassment cases, it is the deliberate

15   failure to curtail known harassment, rather than the harassment itself, that constitutes the

16   intentional Title IX violation."  *Mansourian v. Regents of Univ. of California*, 602 F.3d 957, 967

17   (9th Cir. 2010).

18       If the Title IX claim for damages arises from harassment on the basis of sex, the plaintiff

19   must show: (1) the defendant "exercise[d] substantial control over both the harasser and the

20   context in which the known harassment occur[red]"; (2) the plaintiff must have suffered

21   harassment "that is so severe, pervasive, and objectively offensive that it can be said to deprive the

22   [plaintiff] of access to the educational opportunities or benefits provided by the [defendant]"; (3)

23   an official with "authority to address the alleged discrimination and to institute corrective

24   measures on the [defendant's] behalf" must have had "actual knowledge" of the harassment; (4)

25   the defendant must have acted with "deliberate indifference" to the harassment, such that the

26   defendant's "response to the harassment or lack thereof [was] clearly unreasonable in light of the

27   known circumstances"; and (5) the defendant's deliberate indifference must have "cause[d the

28   plaintiff] to undergo harassment or ma[d]e [the plaintiff] liable or vulnerable to it."  *See Karasek*,

United States District Court
Northern District of California

1  956 F.3d at 1105 (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S.

2  629, 640 (1999)).

3      California Education Code section 220 prohibits discrimination on the basis of gender,

4  gender identity, gender expression, or sexual orientation "in any program or activity conducted by

5  an educational institution that receives, or benefits from, state financial assistance, or enrolls

6  pupils who receive state student financial aid."  Cal. Educ. Code § 220.  Courts interpret the

7  Education Code consistently with Title IX.  *S.G. v. S.F. Unified Sch. Dist.*, No. 17-cv-05678-

8  EMC, 2018 U.S. Dist. LEXIS 66292, at *14 (N.D. Cal. Apr. 19, 2018); *see also Donovan v.*

9  *Poway Unified School Dist.*, 167 Cal. App. 4th 567, 581 (2008) ("the Legislature intended Title

10  IX's elements to govern an action under section 220").  The court analyzes Plaintiff's Title IX and

11  section 220 claims together.

### 1.    Severe, Pervasive, and Objectively Offensive

13   "Whether gender-oriented conduct rises to the level of actionable 'harassment' . . .

14  'depends on a constellation of surrounding circumstances, expectations, and relationships' . .

15  . including, but not limited to, the ages of the harasser and the victim and the number of

16  individuals involved."  *Davis,* 526 U.S. at 651 (quoting *Oncale* v. *Sundowner Offshore Services,*

17  *Inc.*, 523 U.S. 75, 82 (1998)).  "[I]n the school setting, students often engage in insults, banter,

18  teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected

19  to it.  Damages are not available for simple acts of teasing and name-calling among school

20  children. . . . Rather, in the context of student-on-student harassment, damages are available only

21  where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the

22  equal access to education that Title IX is designed to protect."  *Id.* at 651-652.

23      Oakley argues that the harassment suffered by Plaintiff consisted only of a handful of

24  discrete incidents that were not sufficiently severe and pervasive to deprive Plaintiff of equal

25  access to her education.  In opposition, Plaintiff gestures vaguely at the possibility of more

26  incidents of harassment, Opp'n 6 n.2; but the court can only consider facts as alleged in the

27  complaint.  The court must evaluate whether the incidents pleaded by Plaintiff were so severe,

28  pervasive, and objectively offensive that they denied Plaintiff equal access to her education.

United States District Court
Northern District of California

United States District Court
Northern District of California

1        Sexual harassment by classmates can constitute severe, pervasive, and objectively

2  offensive conduct supporting a gender discrimination claim.  For example, in *Davis Next Friend*

3  *LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999), the Supreme Court held

4  that the plaintiff had pleaded a Title IX claim in a case involving repeated incidents of sexual

5  harassment over a five-month period by the plaintiff's fifth-grade male classmate.  *Id.*  The

6  classmate made vulgar comments to plaintiff, attempted to touch the plaintiff's breasts and genital

7  area, and engaged in activity such as putting a door stop in his pants and acting in a sexually

8  suggestive manner toward the plaintiff during physical education class.  *Id.* at 633-634.  Similarly,

9  in *M.M. v. San Juan Unified Sch. Dist.*, No. 219CV00398TLNEFB, 2020 WL 5702265, at *6

10  (E.D. Cal. Sept. 24, 2020), the court held that the plaintiff had pleaded a gender discrimination

11  claim in a case involving sexual harassment by the plaintiff's third-grade male classmate in school

12  settings.  The classmate engaged in activity that escalated from passing crude notes about the

13  plaintiff in Fall 2017, to pushing the plaintiff to the ground, jumping on her back, and grabbing her

14  breasts under her clothing a total of four times in January and February 2018.  *Id.* at 1.  The

15  plaintiff was subsequently forced to remain in the same classroom as her assailant and, in April

16  2018, was seated in the same car as him for the entirety of a school field trip, causing the plaintiff

17  severe discomfort and distress.  *Id.* at 2.

18        Under some circumstances involving off-campus sexual assault, courts have found that

19  post-assault interactions and harassment may be so severe and pervasive that they deprive the

20  student of equal access to education, even if the assault itself did not occur at school.  For

21  example, in *Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438 (D. Conn. 2006), a high

22  school student sexually assaulted the plaintiff (a middle school student) during summer recess and

23  outside of school grounds.  Subsequently, both students returned to school, where they attended

24  classes in the same building.  *Id.* at 441.  The plaintiff continued to experience off-campus teasing

25  and harassment by her assailant's friends, but she did not testify to any harassment on campus.  *Id.*

26  at 441-442.  Ultimately, the plaintiff transferred out of the school district after finishing eighth

27  grade.  *Id.* at 442.  The court held that a reasonable jury could conclude that having to attend

28  classes in the same building and interact with her assailant rose to the level of being so severe and

pervasive that the plaintiff was deprived of the school's educational benefits. *Id.* at 445. In addition, "the proxy-harassment by [the assailant's] friends, while not actionable, supports plaintiff's claim that an interaction with [her assailant], like her interactions with these friends, would be sufficiently distressing or threatening such that the fact of their continued mutual presence in the same building and concomitant possibility of potential interaction impacted her decision to transfer." *Id.; see also Karasek v. Regents of the Univ. of California*, No. 15-CV-03717-WHO, 2015 WL 8527338, at *11 (N.D. Cal. Dec. 11, 2015) (citing *Derby* with approval).

Here, Plaintiff alleges she was the victim of off-campus sexual misconduct by another student, A.A., in October 2021. The allegations about the incident describe unwanted sexual touching and sexual statements. Oakley argues that the court should not consider the October 2021 incident in its analysis of the gender discrimination claims because the incident as alleged was not under Oakley's substantial control. Liability under Title IX only attaches if the school "exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red]." *Karasek*, 956 F.3d at 1105. Oakley argues that it did not have substantial control over A.A. when he was in Plaintiff's family home, so it cannot be liable for the October 2021 incident. Oakley argues that the remaining allegations about on-campus harassment do not meet the severe, pervasive, and objectively offensive standard.

Plaintiff appears to argue that the October 2021 incident was under Oakley's substantial control, citing *Brown v. Arizona*, 82 F.4th 863, 875 (9th Cir. 2023). In *Brown*, the Ninth Circuit held that liability can attach under Title IX when harassment occurs off campus, "so long as the educational institution has sufficient control over both the 'harasser' and the 'context' in which the harassment takes place." 82 F.4th at 876. For example, a university had substantial control over a student's assaults against his girlfriend in his off-campus residence because the university could revoke the student's permission to live off-campus based on his off-campus behavior, and additionally had authority to dismiss the student from the university's football team and revoke his scholarship based on such behavior. *Id.* at 878-79. The Ninth Circuit noted that "a key consideration is whether the school has some form of disciplinary authority over the harasser in the setting in which the harassment takes place." *Id.* at 875.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Unlike the circumstances in *Brown*, Plaintiff does not explain how Oakley exercised

2    control over A.A. in the context in which the October 2021 incident took place. Plaintiff cites Cal.

3    Ed. Code § 48915(c)(4), which confers authority to recommend expulsion of a pupil who has

4    committed or attempted to commit a sexual assault "at school or at a school activity off school

5    grounds." But Plaintiff has not alleged that the October 2021 incident occurred at school or at a

6    school activity; instead, she alleges that the incident occurred in her private residence. She also

7    does not plead that Oakley had authority to discipline A.A. for off-campus misconduct that

8    occurred outside the school context. In sum, Plaintiff has not sufficiently pleaded that Oakley had

9    substantial control over A.A.'s conduct in Plaintiff's family home. Similarly, the allegations

10    regarding A.A.'s attempts to kiss Plaintiff without her consent while they were in a dating

11    relationship in Fall 2021 are devoid of details and are thus insufficient to support an inference that

12    this conduct took place under Oakley's substantial control. There also are no allegations to

13    support an inference that the group chats involving A.A. and Plaintiff were under Oakley's

14    substantial control. As alleged, Oakley cannot be held liable for these incidents of harassment.

15    Nevertheless, harassment does not have to be actionable itself to contribute to the severity,

16    pervasiveness, or offensiveness of on-campus conduct. The court considers the "constellation of

17    surrounding circumstances, expectations, and relationships" when evaluating the nature of

18    harassment. *See Davis*, 526 U.S. at 651. For example, in *Derby*, the fact that the plaintiff had

19    previously been sexually assaulted by a student was a key consideration in the offensiveness of the

20    plaintiff's later interactions with the student on campus. *See Derby*, 451 F. Supp. 2d at 445. Thus,

21    the court views Plaintiff's allegations of gender-based discrimination that occurred beyond school

22    control, including the October 2021 off-campus sexual misconduct, as part of the "constellation"

23    of circumstances surrounding Plaintiff's allegations of on-campus harassment. *See Davis*, 526

24    U.S. at 651.

25    According to Plaintiff, she broke up with A.A. in December 2021 but continued to attend

26    school with him. They were placed in the same English class in the spring semester of 2022. In

27    January 2022, A.A. directed his friends to openly mock Plaintiff with sexually derogatory name-

28    calling in English class. At the pleadings stage, it is reasonable to infer that having to share a

9

1    classroom with A.A. after she complained to Jurand about A.A.'s off-campus sexual misconduct

2    was "distressing or threatening" because of the "possibility of potential interaction" with the

3    person who had sexually targeted her in the past. *See Derby,* 451 F. Supp. 2d at 445. This is

4    bolstered by the allegation that A.A. did, in fact, harass Plaintiff (through proxies) in a classroom

5    setting.

6         Although a teacher reprimanded the students involved in the name-calling incident and

7    Oakley granted Plaintiff's request to transfer to a different English class, Oakley transferred A.A.

8    into Plaintiff's new English class several months later in April 2022. Plaintiff alleges that this

9    caused her "discomfort and anxiety, negatively impacting her mental and emotional well-being

10   and her ability to access her education." Compl. ¶ 11. Due to the nature of the alleged October

11   2021 sexual misconduct and A.A.'s other harassing conduct against Plaintiff, A.A.'s returned

12   presence in Plaintiff's classroom adds support to an inference that she experienced severe,

13   pervasive, and objectively offensive conduct.

14        Plaintiff further alleges that between June and July 2022, A.A. and his friends continued to

15   sexually harass Plaintiff through text messages. Plaintiff subsequently transferred to a different

16   middle school within the district. After Plaintiff's transfer, the next allegations of harassment

17   occurred nine months later when Plaintiff confronted A.A. by text in April 2023, causing a new

18   round of bullying. In April 2023, Plaintiff alleges that she was punched in the back of the head

19   nine times by A.A.'s proxy, and in June 2023, Plaintiff alleges that she was tripped with a towel

20   by A.A's proxy. Plaintiff does not plead the severity of these incidents—for example, it is not

21   clear what physical injury Plaintiff suffered, if any. Moreover, the 2023 incidents are temporally

22   attenuated from those alleged to have occurred in the 2022 timeframe.

23        Nevertheless, as a pleading matter, and taking into account the allegations regarding A.A.'s

24   sexual misconduct; Plaintiff's youth; A.A.'s continuing harassment in and outside of class; and the

25   allegation that a number of students acting as A.A.'s proxies were involved in harassing Plaintiff

26   over multiple months, the court finds that the allegations in the complaint rise beyond mere

27   "teasing and name-calling among school children." *See Davis,* 526 U.S. at 652. The gaps in time

28   between sparsely described alleged incidents make this a close call. On balance, Plaintiff has

United States District Court
Northern District of California

10

1    sufficiently pleaded severe, pervasive, and objectively offensive harassment that deprived her of

2    equal access to her education.

3            **2.      Deliberate Indifference**

4          In a gender discrimination case based on peer sexual harassment, "damages are not

5    recoverable unless 'an official who at a minimum has authority to address the alleged

6    discrimination and to institute corrective measures on the recipient's behalf has actual knowledge

7    of discrimination in the recipient's programs and fails adequately to respond.'  In other words,

8    there must be 'an official decision by the recipient not to remedy the violation.'"  *Karasek*, 956

9    F.3d at 1104-05 (quoting *Gebser*, 524 U.S. at 290).  "The actual notice requirement under Title IX

10   is satisfied where an appropriate official possessed enough knowledge of the harassment that it

11   reasonably could have responded with remedial measures to address the kind of harassment upon

12   which plaintiff's legal claim is based."  *Lopez v. Regents of Univ. of Cal.*, 5 F.Supp.3d 1106, 1122

13   (N.D. Cal. 2013) (citation and quotation omitted).  A school is only liable under Title IX when the

14   need for intervention is so "obvious," and the failure to intervene "so likely to result in Title IX

15   violations," that the school "could reasonably be said to have been deliberately indifferent to the

16   need" for intervention.  *Brown*, 82 F.4th at 882 (quoting *Simpson v. Univ. of Colo. Boulder*, 500

17   F.3d 1170, 1184-85 (10th Cir. 2007)).  "Title IX deliberate indifference requires more than mere

18   negligence."  *Ramser v. Univ. of San Diego*, 779 F. App'x 466, 469 (9th Cir. 2019).

19         Plaintiff alleges that she reported A.A.'s October 2021 off-campus sexual misconduct to

20   her school counselor, Jurand, but Jurand "merely consoled [Plaintiff] without any further

21   appropriate action."  Compl. ¶ 8.  Oakley does not dispute that, as alleged, Jurand was a school

22   official with authority who had actual knowledge of the October 21, 2021 sexual misconduct,

23   rendering Oakley liable if Jurand acted with deliberate indifference.  Plaintiff argues that Jurand

24   was required by federal law to investigate Plaintiff's complaint of sexual misconduct once she had

25   learned of it.  Opp'n 7.  As such, Plaintiff concludes that Jurand's failure to take further action is

26   sufficient to meet the deliberate indifference standard.

27         The regulation cited by Plaintiff, 34 C.F.R. Part 106, does not support that Jurand had a

28   duty to investigate Plaintiff's complaint about the October 2021 off-campus incident.  Plaintiff did

1    not cite a specific section of the regulation.  Based on the court's review, the regulation applies to

2    sex discrimination that occurs under an education program or activity.  *See, e.g.,* 34 C.R.F. §

3    106.11 ("this part applies . . . to all sex discrimination occurring under a recipient's education

4    program or activity in the United States").  As discussed above, Plaintiff has not sufficiently

5    pleaded that the October 2021 incident was in Oakley's substantial control or occurred under an

6    "education program or activity."  Plaintiff does not allege that Jurand knew about other

7    discriminatory conduct taking place in Oakley's education programs or activities.  The allegations

8    hinge entirely on Jurand's knowledge of one incident of sexual misconduct which took place

9    between two students outside of any school context or control.  Plaintiff fails to cite any law

10   mandating that Jurand had to take a particular course of action given what Plaintiff told her, or

11   other authority supporting that Jurand acted with deliberate indifference under Title IX such that

12   the "official policy" of Oakley was to discriminate on the basis of sex.  *See Karasek*, 956 F.3d at

13   1104.

14          Furthermore, the complaint acknowledges that when Plaintiff later experienced on-campus

15   harassment, the school responded.  When A.A.'s friends used slurs against Plaintiff in English

16   class in January 2022, the English teacher reprimanded the harassing students, and the school

17   granted Plaintiff's request to transfer to a different English class.  There are no allegations of

18   further harassment against Plaintiff in a classroom.  Plaintiff points out that the school then

19   transferred A.A. into Plaintiff's new English class several months later in April 2022, but there is

20   no indication in the complaint that anyone other than Jurand knew about A.A.'s history with

21   Plaintiff or had reason to believe that sharing a classroom with A.A. could cause Plaintiff severe

22   distress.  There also are no allegations that Jurand knew at any point that Plaintiff and A.A. had

23   been placed in the same English class and that this made Plaintiff uncomfortable.  "Actual notice"

24   under Title IX requires that an appropriate official "possessed enough knowledge of the

25   harassment that it reasonably could have responded with remedial measures to address the kind of

26   harassment upon which plaintiff's legal claim is based."  *Lopez*, 5 F.Supp.3d at 1122.  As alleged,

27   no single official at Oakley possessed enough knowledge to reasonably be able to remediate the

28   pattern of harassment that forms the basis of Plaintiff's complaint.

1    Likewise, Plaintiff has not alleged deliberate indifference regarding the two events that

2    took place in the 2022-2023 school year.  Plaintiff was physically attacked in April 2023 by one of

3    A.A.'s proxies, but the complaint does not support an inference that Oakley was on prior notice

4    such that its failure to prevent the incident was "clearly unreasonable in light of the known

5    circumstances."  *See Davis,* 526 U.S. at 648.  Plaintiff does not plead that the school knew about

6    the text exchanges between Plaintiff, A.A., and A.M. that occurred days before the attack.

7    Plaintiff only pleads that Jurand and Kondonijakos knew A.A. had committed an incident of off-

8    campus sexual misconduct against Plaintiff in October 2021.  Deliberate indifference "must, at a

9    minimum, cause students to undergo harassment, or make them liable or vulnerable to it."  *Davis*,

10   526 U.S. at 645.  The allegations are insufficient to support a reasonable inference that Oakley's

11   failure to investigate the October 2021 off-campus incident caused one of A.A.'s friends to

12   physically attack Plaintiff at school in April 2023, particularly since A.A. and Plaintiff no longer

13   shared a school, A.A. apparently stopped harassing Plaintiff after she transferred schools before

14   Plaintiff re-initiated contact, and in light of the 18-month passage of time.  Plaintiff also does not

15   allege what Oakley's response was to the April 2023 attack, or how that response was

16   unreasonable.  Likewise, the court cannot reasonably infer from the pleadings that the June 2023

17   tripping incident was caused by Oakley's deliberate indifference.  Plaintiff complains that Oakley

18   failed to take appropriate action after the tripping incident, but the pleadings do not contain

19   allegations to support that Plaintiff experienced harassment or was vulnerable to harassment after

20   the tripping incident.

21   Oakley is not required to "purg[e]" its schools of "actionable peer harassment or . . .

22   engage in particular disciplinary action" regarding incidents of misconduct.  *See Davis*, 526 U.S.

23   at 648.  The Supreme Court has held that "courts should refrain from second-guessing the

24   disciplinary decisions made by school administrators."  *Id.*  A plaintiff alleging deliberate

25   indifference must do more than plead a "negligent, lazy, or careless" response—instead, "the

26   plaintiff must demonstrate that the school's actions amounted to 'an official decision . . . not to

27   remedy' the discrimination."  *Karasek*, 956 F.3d at 1105 (quoting *Oden v. N. Marianas Coll*., 440

28   F.3d 1085, 1089 (9th Cir. 2006)).  Here, Plaintiff has not pleaded that Oakley's response to the

13

1    various incidents of alleged misconduct and harassment were "clearly unreasonable in light of the

2    known circumstances." *See Davis,* 526 U.S. at 648.  In sum, Plaintiff has not pleaded deliberate

3    indifference.

4         The court finds that Plaintiff has not pleaded sufficient facts to support a Title IX claim or

5    a section 220 claim.  The claims are dismissed with leave to amend.

6         **B.    Negligence Claims**

7         Oakley argues Plaintiff has not identified the statutory basis for her negligence and

8    negligent supervision claims.  Oakley also contends that Plaintiff's negligence-based claims must

9    be limited to incidents that occurred after March 28, 2023, and Plaintiff has not alleged a breach of

10   duty after that time.  As Oakley raises the same arguments for both claims, the court analyzes

11   them together.[2]

12        "[T]o state a cause of action against a public entity, every fact material to the existence of

13   its statutory liability must be pleaded with particularity." *Lopez v. S. Cal. Rapid Transit Dist.,* 40

14   Cal. 3d 780, 795 (1985) (quoting *Peter W. v. San Francisco Unified Sch. Dist.*, 60 Cal. App. 3d

15   814, 819 (1976)).  "Duty cannot be alleged simply by stating 'defendant had a duty under the law';

16   that is a conclusion of law, not an allegation of fact.  The facts showing the existence of the

17   claimed duty must be alleged. . . . Since the duty of a governmental agency can only be created by

18   statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very

19   least be identified." *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792, 802 (Ct. App.

20   1986) (citation omitted).

21        Plaintiff's complaint cites Cal. Gov. Code section 815.2.  Compl. ¶¶ 35, 39.  This statute

22   provides that public entities are "vicariously liable for the tortious acts and omissions of its

23   employees committed within the scope of employment under circumstances in which the

24   employee would be personally liable for the conduct." *Torsiello v. Oakland Unified Sch. Dist.,*

25   197 Cal. App. 3d 41, 44-45 (Ct. App. 1987) (citing Cal. Gov. Code § 815.2(a).)  "The effect of

26

27   ───────────────
     [2] Oakley also argues that the court should decline to exercise supplemental jurisdiction over the
28   claims.  This argument is premature because the court has granted leave to Plaintiff to amend her
     federal claim.

United States District Court
Northern District of California

1    this statute is to incorporate 'general standards of tort liability as the primary basis for respondeat

2    superior liability of public entities.'" *Id.* (quoting Van Alstyne, Cal. Government Tort Liability §

3    2.32 (Cont. Ed. Bar 1980)).

4         Oakley's argument that Plaintiff failed to identity the statutory basis for her negligence-

5    based claims lacks merit.  Plaintiff identified Cal. Gov. Code section 815.2 in her complaint.

6    Compl. ¶¶ 35, 39.  This is sufficient to plead a statutory basis for liability.  *See C.A. v. William S.*

7    *Hart Union High Sch. Dist.,* 53 Cal. 4th 861, 868 (2012).

8         Oakley next argues that Plaintiff's complaint fails to explain how Oakley breached its duty

9    of care in the relevant time period.  Mot. 15.  Plaintiff concedes that her negligence-based claims

10   are limited to incidents that occurred after March 28, 2023.  Opp'n 9.  Therefore, the court only

11   considers the April and June 2023 incidents when evaluating these claims.

12        "California law has long imposed on school authorities a duty to 'supervise at all times the

13   conduct of the children on the school grounds and to enforce those rules and regulations necessary

14   to their protection.' . . . Either a total lack of supervision or ineffective supervision may constitute

15   a lack of ordinary care on the part of those responsible for student supervision.  Under section

16   815.2, subdivision (a) of the Government Code, a school district is vicariously liable for injuries

17   proximately caused by such negligence." *C.A.,* 53 Cal. 4th at 869 (citing *Dailey v. Los Angeles*

18   *Unified Sch. Dist.,* 2 Cal. 3d 741, 747 (1970)).  "In addition, a school district and its employees

19   have a special relationship with the district's pupils." *Id.*  "[T]he duty of care owed by school

20   personnel includes the duty to use reasonable measures to protect students from foreseeable injury

21   at the hands of third parties acting negligently or intentionally.  This principle has been applied in

22   cases of employees' alleged negligence resulting in injury to a student by another student." *Id.* at

23   870 (citing *J.H. v. Los Angeles Unified School Dist*., 183 Cal. App. 4th 123, 128-129, 141-148

24   (2010)).

25        Plaintiff's negligence claim states that Oakley had a legal duty to supervise students in its

26   charge, and that Oakley, "by and through its employees acting within the scopes of their public

27   employment, breached [its] duty of care by failing to prevent bullying and peer hostile

28   environment based on gender, gender identity, and/or gender expression, despite actual notice of

United States District Court
Northern District of California

15

said conduct." Compl. ¶¶ 34-35. The complaint fails to allege how the April and June 2023 incidents were "foreseeable" injuries such that Oakley should be held liable for them. *See C.A.,* 53 Cal. 4th at 870. Oakley's knowledge (through Jurand) that A.A. had committed an incident of off-campus sexual misconduct against Plaintiff in October 2021 did not reasonably put Oakley on notice that A.A.'s friends would physically attack Plaintiff in school settings over a year and a half later, even when Plaintiff was no longer attending the same school as A.A. Plaintiff has not pleaded with particularity that Oakley breached its duty to use reasonable measures to protect Plaintiff from foreseeable injury.

Plaintiff's negligent supervision claim states that Oakley owed a duty to protect its pupils from physical and/or emotional harm, and that Oakley, "by and through its employees acting within the scopes of their public employment, breached [its] duty of care by committing acts and omissions that resulted in the failure to supervise and/or train personnel who could, in turn, adequately supervise school grounds and prevent [Plaintiff] from suffering bullying and peer hostile environment based on gender, gender identity, and/or gender expression." *Id.* ¶ 38-39. Plaintiff has not specifically alleged what "acts and omissions" committed by Oakley resulted in the failure to supervise or train personnel. *See, e.g., C.A.,* 53 Cal. 4th at 875 (finding that school can be vicariously liable where administrators and employees knew or should have known of guidance counselor's dangerous propensities, but nevertheless hired, retained and failed to properly supervise her, leading to her sexually abusing a student). And as discussed above, Plaintiff has not alleged that Oakley personnel could have reasonably foreseen and prevented the April and June 2023 incidents. Plaintiff has not pleaded a negligent supervision claim with the required particularity.

The court finds that Plaintiff has not pleaded sufficient facts to support the negligence-based claims.

## IV.    CONCLUSION

The court grants Oakley's motion to dismiss Plaintiff's claims. The court grants Plaintiff leave to amend her complaint by **November 12, 2025.**

The Initial Case Management Conference set for October 29, 2025 is CONTINUED to

16

1    February 4, 2026 at 1:30 p.m.  A joint case management statement is due January 28, 2026.

2

3

4        **IT IS SO ORDERED.**

5    Dated: October 21, 2025

6                                                        _____

7                                                                Donna M. Ryu

                                                            Chief Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

17