UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

| | |
|---|---|
| C. T., et al., | Case No. 24-cv-09507-ASK |
| Plaintiffs, | |
| v. | **ORDER RE MOTION TO DISMISS** |
| | Re: Dkt. 33 |
| OAKLEY UNION ELEMENTARY SCHOOL DISTRICT, | |
| Defendant. | |

Plaintiff C.T., a minor, sued the Oakley Union Elementary School District for the District's alleged failure to respond to her report of student-on-student sexual abuse. Dkt. No. 30.[1] The District's motion to dismiss under Rule 12(b)(6) contends, among other things, that a school cannot be held liable for failing to respond to an off-campus sexual assault by another student. That contention is wrong both as a matter of law and on this record. For that reason, among others, the motion to dismiss is **DENIED**.

## I.    BACKGROUND

Critical here is the Rule 12(b)(6) posture, where C.T.'s well-pleaded allegations are accepted as true and read in the light most favorable to her. C.T. pleads as follows.

In October 2021, when she was in seventh grade, C.T.'s then-boyfriend A.A. sexually assaulted her on the front porch of her family home. Dkt. 30 ¶ 7. Over the next couple of months, while the two were still dating, A.A. kissed and attempted to kiss C.T., without her consent, both on and off campus. *Id*. ¶ 8. In one on-campus incident, A.A. attempted to climb on top of C.T. *Id*. C.T. reported A.A.'s advances to the District's School Psychologist during the Fall of 2021. *Id*. ¶

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

9. In response, the School Psychologist "merely consoled C.T.," but took no further action. *Id.* C.T. ended her relationship with A.A. in December 2021. *Id.* ¶ 8.

During the Spring 2022 term, A.A. directed his friends and new girlfriend to use slurs against C.T. and spread rumors about her at school. *Id.* ¶ 11. C.T.'s English teacher—who does not appear to have known of the prior history of sexual assault—reprimanded A.A.'s friends for using slurs against C.T. in class. *Id.* ¶ 12. In January 2022, at the request of C.T.'s parent—who was also unaware of the sexual assault—the District transferred C.T. to another English class. *Id.* ¶¶ 12-13. But in March 2022, the District transferred A.A. into C.T.'s new English class, where A.A.'s bullying resumed. *Id.*

In June 2022, A.A. and his friends began to harass C.T. in a group chat. *Id.* ¶ 14. To save C.T. from the ongoing harassment, her parent successfully applied to transfer C.T. to O'Hara Park Middle School ("O'Hara") for eighth grade in July 2022. *Id.* ¶ 15. In February 2023, C.T. confronted A.A. via text about his mistreatment of her. *Id.* ¶ 18. A.A. added to the text thread four of his friends, who then threatened to physically attack C.T. if she did not "keep [her] mouth shut." *Id.* Two days later, one of those friends punched C.T. in the back of the head nine times as C.T. was walking to class. *Id.*

In April 2023, C.T. finally told her parents about A.A.'s sexual abuse. *Id.* ¶ 19. In May 2023, C.T.'s parents learned from the District's School Counselor that C.T. had reported A.A.'s sexual misconduct to the School Psychologist during the Fall 2021 term. *Id.* ¶ 20. In June 2023 at a District-sponsored field trip, one of A.A.'s friends intentionally tripped C.T. with a towel. *Id.* ¶ 21.

C.T., by and through her parents, brings four claims against the District: (1) violation of Title IX, (2) gender discrimination, (3) negligence, and (4) negligent training and supervision. The District moves to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. Dkt. 33.

## II.    DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[A] complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The facts alleged must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Conclusory assertions are insufficient to state a claim. *Iqbal*, 556 U.S. at 678. That said, we accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019).

### A.    Discrimination Claims

The District challenges C.T.'s discrimination claims under Title IX of the 1972 Education Amendments and California Education Code § 220 on the grounds that the Amended Complaint fails to allege the District's knowledge of A.A.'s on-campus abuse of C.T. Dkt. 33 at 9-13.

Title IX prohibits sex discrimination "under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). To state a sex discrimination claim under Title IX, Plaintiff must establish five elements: (1) the District "exercised substantial control over both the harasser and the context in which the known harassment occurred"; (2) Plaintiff suffered harassment "that is so severe, pervasive, and objectively offensive that it can be said to deprive Plaintiff of access to the educational opportunities or benefits provided by the [District]"; (3) an official with "authority to address the alleged discrimination and to institute corrective measures on the [District's] behalf" had "actual knowledge" of the harassment; (4) the District acted with "deliberate indifference" to the harassment, such that the District's "response to the harassment or lack thereof was clearly unreasonable in light of the known circumstances"; and (5) the District's deliberate indifference must have "caused [Plaintiff] to undergo harassment or made [Plaintiff] liable or vulnerable to it." *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1105 (9th Cir. 2020) (cleaned up).

Section 220 prohibits discrimination based on gender, gender identity, gender expression, or sexual orientation "in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance…." Cal. Educ. Code § 220. Courts interpret the Education Code consistently with Title IX. *See Donovan v. Poway Unified School Dist.*, 167

United States District Court
Northern District of California

Cal. App. 4th 567, 581 (2008) ("[T]he Legislature intended Title IX's elements to govern an action under section 220."). The Court therefore analyzes C.T.'s Title IX and § 220 claims together.

The District's motion attacks C.T.'s complaint by chopping it into parts, and then observing that none of those parts states a viable claim. For instance, the District takes the most serious claims of sexual assault and unwanted touching, contends that they occurred off-campus, and therefore were outside the District's control under the first prong of the *Karasek* test and can be ignored. With the most serious alleged acts conveniently put aside, the District then observes that the subsequent acts of bullying were: "simple acts of teasing and name-calling among school children" (even though these acts appear much more serious when one considers the earlier sexual assaults); acts that other teachers in the District could not have predicted (even though they were exactly the types of acts that the District should have been guarding against once it learned of the earlier sexual assaults); or acts that the District actually did something about (even though the District's actions do not appear to have been informed by the occurrence of the sexual assaults). The District ignores altogether the plausible inference that the subsequent acts of harassment may never have occurred if the District had reasonably responded to C.T.'s report of student-on-student sexual abuse. As should be apparent, this mode of attacking a complaint fails.

Accordingly, C.T. pleads at least two plausible, cognizable theories of liability for her discrimination claims.

***First***, C.T. allegedly reported at least one instance of sexual assault ***on-campus***—*i.e.*, that A.A. allegedly tried to kiss her and to climb on top of her while on-campus—to the School Psychologist, who did nothing.[2] *See* Dkt. 30, ¶¶ 8-9. On this legal theory, the District was deliberately indifferent to one or more reported incidents of on-campus sexual assault. By doing nothing about the report, the District permitted C.T. to remain in the presence of A.A. and created an environment where A.A. and his friend group could further retaliate against C.T. with limited

---

[2] While the Amended Complaint, as drafted, is not entirely clear on what exactly C.T. reported to the School Psychologist, the pleading is amenable to this interpretation, and Plaintiff's counsel, during argument, affirmed that the pleading indeed alleges that C.T. reported this incident to the School Psychologist and reported that it occurred on-campus.

United States District Court
Northern District of California

consequence. Nor was C.T. admonished to raise further instances of harassment to the school. C.T. fairly alleges that this ongoing exposure to A.A. and harassment by his friend group caused her emotional harm to the point that it deprived her of the educational benefits provided by the District. At the pleading stage, where reasonable inferences are taken in C.T.'s favor, such continued exposure to A.A. and the follow-on bullying was severe, pervasive, and objectively offensive. Additionally, the School Psychologist was at least one official with actual knowledge of the alleged sexual assaults and the authority to institute corrective measures. To the extent that other District officials were unaware of the sexual assaults, C.T.'s allegations support the plausible inference that that is because the School Psychologist failed to convey this critical information.

***Second***, even if C.T. reported only instances of ***off-campus*** sexual assault to the School Psychologist, Title IX caselaw still permits a plaintiff to proceed on the theory that once a school learns of an off-campus sexual assault, it learns of a "credible threat" or of a "substantial risk of abuse to students," and therefore begins "to exercise substantial control over the context" of the alleged harassment. *DeGroote v. Arizona Bd. of Regents*, No. CV-18-00310, 2020 WL 10357074, at *6, *8 (D. Ariz. Feb. 7, 2020); *see also Doe ex rel. Doe v. Derby Bd. of Educ.*, 451 F. Supp. 2d 438, 444-446 (D. Conn. 2006) (permitting the plaintiff high school student to proceed to trial on a theory that after an off-campus sexual assault, the school did nothing to separate her from her assailant in school, and did nothing to prevent further off-campus harassment by the plaintiff's classmates).

Accordingly, the District's motion to dismiss C.T.'s discrimination claim is **DENIED**.

### B.     Negligence Claims

The District attacks C.T.'s negligence claims based on the one-year limitations period that she had to submit a government tort claim following the accrual of her cause of action (*see* Cal. Gov. Code §§ 911.2, 911.4, 911.6). C.T. filed her claim on March 28, 2024. As a result, the District contends that only those acts of harassment that post-date March 28, 2023, can legally constitute a portion of the negligence claim. Because C.T. alleges only one act of harassment that post-dates March 28, 2023, the District argues that this one act, standing alone, is an insufficient predicate for a negligence claim, and so the negligence claims should be dismissed.

United States District Court
Northern District of California

United States District Court
Northern District of California

The District's premise is fundamentally flawed. The complaint alleges that, as of March 2023, C.T.'s parents had not even learned that C.T. had been sexually assaulted by A.A., despite the fact that the District's School Psychologist had possessed that information since the Fall of 2021. Dkt. 30 ¶¶ 9, 20. In other words, the Complaint permits the plausible inference that if C.T.'s parents had known of the sexual assaults earlier, they may have submitted a tort claim earlier. Given that the Amended Complaint supports a contention by C.T. of delayed discovery or equitable tolling, deciding a statute-of-limitations-style defense at the pleadings stage is inappropriate. *See, e.g.*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) ("[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.").

The Court therefore **DENIES** the District's motion to dismiss the negligence claims.

### III.    CONCLUSION

For the reasons stated above, the District's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 17, 2026

AJAY KRISHNAN
United States Magistrate Judge

6